May it please the court and counsel, my name is Wendy Holt and I represent Larry Chezem. The law provides that guilt is not based on association, knowledge, or the failure to disapprove of a conspiracy, mere presence where a crime is being committed, or failure to report criminal activities. And that is precisely what the case against Chezem was based on. The government's case against Larry Chezem was based in the main on the testimony of three witnesses, Tracy Brockway, Steve Morey, and John Erdman. These are three members of a group that the media dubbed Project 7. The testimony in this case was unequivocal that this group was originally formed with the purpose of preparing for a natural disaster or a national emergency. And to that end, the members of this group stockpiled food and equipment, and they engaged in all kinds of survivalist training, including firearms training. However, importantly in this case, each one of these witnesses, Erdman, Morey, and Brockway, all testified that they never heard Chezem's gun fire more than a single shot. And although the government has attempted throughout this case to insinuate that his gun was a fully automatic gun, the testimony was that this group formed in about January of 2001. And in February of 2002 was when the group's leader, Burgett, disappeared, which I will touch more upon later, which is when the group really basically fell apart. During that time there was firearms practice. That's over a year's worth of time. And it defies logic that if, in fact, Larry Chezem was involved in automatic weapons, that his weapon was automatic, that these training sessions all involved the firing of automatic weapons, that during this whole time no one ever heard his gun fire in more than a single shot mode. Is his gun going to be that important? He's on trial for conspiracy to possess illegal firearms. Do you think this case turns or falls on whether or not his gun was presented to the jury? It wouldn't except for other factors. It turns on whether he took affirmative actions to support this conspiracy, whether he had any intention and purpose of controlling automatic weapons, whether he had the purpose of helping others to do so, whether he had the purpose of helping them to store them. Like being in charge of the firing range? The testimony on being in charge of the firing range was that he was in charge of safety. Again, that would simply be a mere presence there when automatic firearms were being fired. The testimony was that he was in charge of safety-type aspects. And I believe it was Morey who testified about one particular training session where everybody was told to just fire a single shot, that he wasn't talking in terms of firing multiple shots at a time. When you say he was there, though, just as the safety person, was this a privately run firing range? They talk about the power line, which is, I didn't try the case, and apparently that's someplace up in Kalispell. I don't know the answer to that question. But was he an employee of the firing range or was he part of the group? No, he was there as- Part of the group, was he? Yes. So he defines his role as safety, but still he's whoever's the range master. Is that what he was, the range master? That's the term that was used in the trial. That's what normally the person who tells them to lock, load, and fire is called, and that's their role is to make sure that nobody's in line to fire and the like. But that still would not put him in possession of an automatic weapon or put him in the position of aiding and abetting somebody else's possession of an automatic weapon. Well, if somebody-wait a minute. If he's part of this group, he assumes the role of range master. And somebody does fire, you dispute whether there's evidence of it. But if everybody on the firing line is firing automatic weapons, rapid fire, and he's the range master, you say that that's not enough evidence for a jury to conclude that a person in that role would still be associated with the automatic weapons fire? I would argue that that is simply mere presence, that he is simply there, that he is not assisting with the possession of the automatic weapons, nor is he touching them or intending to touch them himself. I can assure you when I was doing my firing on the Army firing line and the range master was a sergeant, he did not consider himself a mere presence. I mean, they have a real functional role. So that's why I was asking whether this was an actual-in other words, if he was there as an employee of a firing range, then one might argue that all he's doing is being an employee. But when he's a member of the group, it seems he's assuming. Well, in any event, it does seem to me that that's a rough photo. There was testimony that he was present when automatic weapons were fired. But I think that the testimony was only that he was present when automatic weapons were fired. If his gun is so important, what do you do with his admission to Maury that he had a mechanism that converted his gun into an automatic weapon and that he was concerned that law enforcement would find it in the trailer where all the other weapons were stored? I think that that cuts. If there was something that would converge his weapon to an automatic weapon, his weapon probably wasn't an automatic weapon. And by the same token, the testimony was that it was one of Project 7's trailers that things were stored in. I thought, doesn't the statute prohibit possession of parts of the gun that make it usable as an automatic weapon? I think that there was testimony to the effect that that is illegal to possess certain parts of weapons. But there is no evidence that Larry Chisholm ever went to any of the trailers that Project 7's things were stored in, that he ever inquired about it, that he ever tried to get to those trailers. And, again, that goes to his purpose and intention to control weapons. Did you address the guns stacked up on the floor in front of the jury box? Yes, Your Honor. What happened there is that all of these, during the first and second days- I know what happened, but what's the ultimate error in that? The ultimate error is that none of those weapons were ever put into Chisholm's hands. There is no evidence that he ever had any personal possession of any of those weapons. There were, I believe, 11 of them. But they were introduced as part of showing what he was proximate to. Is that correct? They were introduced as being Project 7's weapons, and what they were looking for is guilt by association. Well, you argue in your brief that there was misconduct on the part of the prosecutor in leaving the weapons out. There's a couple of reasons I believe that that was misconduct. You haven't asked my question. Oh, I'm sorry. I apologize. Whose responsibility is it to take care of exhibits such as these weapons? That is, who is the custodian after the weapons are placed in evidence? My understanding of the way that Judge Malloy was explaining it, he was quite irate when he learned that these weapons had been placed out of his line of sight. But what he- No, I'm not talking about line of sight. My question is very direct. Whose responsibility is it to take care of these weapons after they're in evidence? You seem to be charging the prosecutor is responsible for the placing of the weapons. And you base that upon what? The statements by Judge Malloy that what the practice in his courtroom is that once a weapon is introduced, it goes back to the ATF agents for storage. Well, you're familiar with the local rules of your own district, correct? I try to be. There isn't a local rule as far as criminal cases are concerned. But for civil cases, it says the clerk shall keep custody of exhibits that are not available in CM slash ECF for the duration of the trial. I suspect that the same rule applies for criminal cases. So it's the clerk that has responsibility to keep custody of the exhibits. Why, then, is the prosecutor committing prejudice by the clerk not doing something else with the exhibits? Well, as I stated before, the practice and procedure in Judge Malloy's court is when there are firearms, they go back to the ATF agent for storage. Is there something in the record that tells us that? Yes, there is. I can – I believe it's in my brief. It's in my blue brief. Yes, it is. Let's see. I think it's around transcript of page 532. Judge Malloy says any – he's talking about how angry he is about the weapons being left out. Any competent judge wouldn't have. I didn't see them. I had no idea they were there. If I had known they were there, you'd have done it the way they are always kept, either by the ATF or the FBI behind your bench. They go back after the case is over, but they don't run them back and forth every time they need them. I believe that that is the implication of what Judge Malloy said. And that would be consistent with the civil rule, that the clerk has custody of the exhibits at the end of the trial, then they go back to the parties. But this is during the trial where the clerk has custody of the exhibits. So the clerk's responsible. Why did the prosecutor, in your estimation, commit prejudicial misconduct because the clerk left the exhibits or the clerk left them? Well, I would say, first of all, two reasons, the point that I've just previously made, and also that for the clerk to take custody of things, in my experience, what the party does is hand the exhibit to the clerk. Well, I'm afraid your experience is not one that we can rely on for this case because it's not in the record, because we can't use my experience, 15 years trying lawsuits and quite a few others hearing them. We need to go to the record. What does the record tell us about why the prosecuting attorney, in your judgment, committed prejudicial misconduct? The fact that the prosecutor put the guns out of the sight of the judge, who made it very clear that had he known that those guns were laying on the floor the entire trial would have done something about it, that the practice and procedure in his courtroom is that they go to the ATF or the FBI after they have been introduced. No, no, no, no. After the trial. I don't think that that's what he said. I disagree with you on that. So the practice would be as soon as they're introduced, they're taken someplace, and each time you want to show them to a witness, you call the FBI and say bring the guns over, and then they go back and the witness will bring them over. That's the practice? What the judge says is behind your bench. I think he's talking about behind counsel table. I see. So the clerk should have called the FBI and had them pick them up? You know, as I said before, my experience is that for the clerk to take possession, the attorney handles it, hands it to the clerk. In this case, I think the clear implication is that the judge expected the prosecutor to give them to the ATF or FBI agent. Well, you're well over your time now. Thank you. Thank you. Okay. Mr. Johnson? Mr. Johnson? Good morning, Your Honor. You may proceed. Good morning. Thank you, Your Honor, and may it please the Court. Thank you for allowing me to appear by videoconference. It's of great assistance to our district. Let me first approach the weapons issue on the floor. I think that the main issue on this topic is whether or not they resulted in their presence on the floor in some sort of unfair prejudice here. Excuse me. Could you just clarify the questions that Judge Wallace was asking? Is the normal procedure in Judge Malloy's court for a weapon, once it has been used in connection with a particular witness on the stand, for the prosecutor to take the weapon and hand it over to the ATF or FBI and store it out of the jury's sight behind the table? Not necessarily take it out of the courtroom, but get it out of the area in front of a jury box? Your Honor, I am not familiar with Judge Malloy's practice in that regard. It appears from his remarks that he expected that to occur. All right. Mr. Johnson, I'd just like to ask you a question. Are you conceding that there was prosecutorial misconduct and just arguing the harmless prong? Absolutely not, Your Honor. In this case, there was no objection made by the defense as to the presence of those weapons. It is clear from the record here that the prosecutor was using that evidence throughout the examination of the witnesses during that time. It is clear from the testimony that there was no— Well, excuse me. Sir, let me just ask you about that last statement you made. What Judge Malloy actually said was that it was fine to have them out while the expert witness was testifying and you needed— or you weren't the trial lawyer, as I understand it— while the trial lawyer prosecutor needed to ask the expert witness questions about it, but you didn't need to have the guns out during cross-examination and they—and closing—I'm sorry, during closing, and yet they were all laid out during the closing argument as well instead of being behind the bench or having been delivered to the ATF. And he thought—he expresses that had there been an objection, he would have sustained it. So it's not really—resting on there was no objection when it was a pro se defendant isn't really your strongest argument. So either of those two bases are very persuasive for me. So why wasn't it prosecutorial misconduct? Certainly, Your Honor, there was a reason to have the weapons present when the prosecutor was using them in reference to testimony, introducing them in foundation testimony with these witnesses. When Mr. Chesum testified in cross-examination, he made reference to the fact that these were hunting weapons. The prosecutor made note that these look like hunting weapons. Clearly, it was important for that purpose. I think the larger issue here and the most important issue here is that it was probably an oversight that they were left in the courtroom if that was contrary to Judge Malloy's rule. Clearly, the judge observed them being handed the witnesses during the trial and they were kept out in front of the jury's box. But the judge went to great pains to describe how they were not visible by the jury. And furthermore, that that presence on the floor simply wasn't prejudicial to the defendant in any way. And the court adequately and correctly distinguished itself. I understand the prejudicial argument that you make in your brief. One aspect of that that I found troubling was this newspaper report that was submitted as part of the record that said that all afternoon every witness taking the stand had to navigate around the weapons and Chesum was the only person to walk across the floor of the courtroom like the guns were not there. And what I find troubling about that is if that truly occurred, and I guess we don't have anyone here to tell us who was present during the trial, then that would be prejudicial because it would show some kind of level of comfort of Chesum with the guns that other witnesses didn't have, which would tend to be more proof of guilt. I believe that's absolutely not prejudicial, at least in any harmful way, Your Honor. These were different than the weapons that were in the photograph in HIT. These were weapons that Mr. Chesum chose to associate with throughout the course of the conspiracy here. He was the range master. These were the weapons that he described in his coded conversations with Defendants Morey and Erdman. They were directly relevant to that testimony and to his cross-examination testimony. And as you recall on cross-examination, Mr. McLean asked Mr. Chesum to respond to a number of things he had stated in his statement that was captured by Mr. Erdman, and clearly his responses were not adequate. I mean, he was a person who chose to associate himself with these arms, and therefore they did not draw the same type of unfair prejudice that they did in the HIT case. It's not as if the defense in this case was that I've never been around these weapons, that I'm not comfortable or that I am comfortable around weapons, or that I'm not associated with them. The defendant would like us to believe that he wasn't associated with these weapons, but reasonable inferences from the evidence are that he chose to be very much associated with these weapons, and in fact he was the range master and he was comfortable with these weapons. And further, Your Honor, I think that we need to clarify for the record that it is fair for the jury to infer that not only did the defendant choose to associate and become comfortable with these weapons and their firing and their use in possible paramilitary maneuvers, but the record seems to suggest and support the inference that he owned his own automatic weapon. It was not at the trial because, as he stated to Mr. Erdman in jail, that he had hidden it up in a cabin, but he was clearly worried that they would find the mechanics for that automatic rifle that would make it a fully auto. So I think the record, when taken as a whole, really does not support a finding of any unfair prejudice merely by the presence of those weapons on the floor that the jury could not see. And that is not the type of prejudice that the court found in HIT, and it is not the type of prejudice that requires the court to reexamine whether or not the defendant was somehow unfairly associated with automatic weapons and machine guns. That was his whole purpose in joining this conspiracy. I have some question whether you can absolutely say the jury could not see those weapons. As I sit now, I can't see what's in front of me on the floor, but that's because I'm sitting. Now, I don't know if any of those pictures, and there's no evidence to show it, that those pictures reflect what the jury saw when they walked in and out of the jury box. It doesn't take, you know, much to lean over or for somebody in the row to lean over and to think that jurors wouldn't mention it in recess or whatever. So I don't think I can accept that the record has clearly established that the jury never saw those weapons. Let me ask you a question, counsel. Did you try this lawsuit? Were you the trial counsel? I did not, Your Honor. You were? No. You were not? I was not. Okay. I want to know the government's position. Of course, it's a serious allegation of prosecutorial misconduct. As you know, the Department of Justice looks upon those issues very seriously. What is the position of the government as to whether or not this was prosecutorial misconduct? Your Honor, I see nothing in the record that reflects any sort of affirmative misconduct on the part of a prosecutor. This is simply evidence that was on the floor that was being used throughout the trial. There was no evidence from anything and no indication from anything in the record that this was somehow used for an unfair advantage. Well, there is the reaction of the district judge who thought it was a very serious problem at the time and a breach of the etiquette of his court. And the implication of Judge Malloy in his statements was that prosecution was taking advantage of the fact that Chisholm was not a lawyer. He was representing himself. In his ruling, Judge Malloy focuses on the harmlessness. He says the display of the weapons on the courtroom floor in front of the jury box may have been improper, and if Chisholm had been represented by counsel at the time, would probably have elicited an appropriate objection. So that does suggest that the sitting judge, the one person that we have on the record who was there, thinks otherwise. So my concern is that the government now seems to think this is business as usual and no harm, no foul. I don't think that's the way it works. Who was the trial lawyer? The trial lawyer was Chris McClain in our Missoula division. And why is he not arguing this? He could maybe clear some of this up for us. Your Honor, as I understand it, he is in heavy preparations for a major environmental lawsuit in front of Judge Malloy at this time. Now, Your Honor, I don't want to diminish, I guess, the seriousness of what Judge Malloy felt he observed. Clearly, Judge Malloy reacted that this, if he had been aware of it, should have been taken care of. Clearly, there was no effort by the government to somehow conceal the fact that these weapons were being kept out on the floor. In fact, the testimony would seem to indicate that everybody was aware of that. Except the judge. Except the judge. Yeah, and I find that troubling, too, Your Honor, because clearly the judge should have been watching the prosecutor hand evidence to the witnesses right in front of him. And the photographs would seem to reflect that the judge should have been at least in eyesight of that going on. There does not appear to be any indication in the record that the prosecutor, and I know Mr. McClain for many years, used this to somehow or concealed this for some advantage because the defendant was pro se. Clearly, if he had been aware of it, I know that the government would have taken the necessary precautions. It is clearly a situation where it became to the judge's attention later. It was dealt with at that time. And the bottom line here is that it did not work. An unfair prejudice in this case. I see that my. Is that my. No, I have your time. You're over your time. You're over time. Thank you. Wait a minute. Does anyone have any other questions? OK. Thank you very much. Thank you. I have a question. There's a question asked about what the practice is. We don't have anything in writing on it. What is the practice when weapons are introduced? When are they sent back to the FBI or ATF? What is it? Is there anything in the record that tells us the practice? Well, clearly, we know from the record that the jury was able to look at these weapons when it was deliberating. I think the judge made those findings. It is my understanding that the practice is that the clerk will give a receipt for that evidence and then it's returned to a secure location. So ordinarily, evidence is left with the clerk of court until a receipt is given and it's removed and placed in a secure location. That is my understanding, Your Honor. All right. Thank you, counsel. United States v. Chisholm will be submitted.
judges: Wallace, Wardlaw, Fisher